UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SAMUEL T. TURNER, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 1:11CV00178 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S. C. § 2255 to vacate, set aside or correct sentence by Samuel T. Turner, a person in federal custody. On April 5, 2010, Turner was found guilty by a jury of the offense of being a felon in possession of a firearm and, on July 2, 2010, this Court sentenced Turner to the Bureau of Prisons for a term of 180 months, a sentence within the sentencing guideline range. Turner's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**FACTS**

**A.    The Indictment.**

On December 10, 2009, a Grand Jury in the Eastern District of Missouri, Southeastern Division, returned an Indictment against Samuel T. Turner, alleging that Turner was a previously convicted felon in possession of a firearm that affected interstate commerce in violation of 18 U.S.C. § 922(g)(1). Turner was arrested and made his initial appearance on December 18, 2009. The Federal Public Defender's office was appointed to represent Turner. Turner was arraigned on December 22, 2009. At that arraignment, Turner pled not guilty to the charge. Attorney Michael A. Skrien appeared on behalf of Turner.

**B.     Pretrial Motions.**

On January 5, 2010, Turner's attorney filed a notice that Turner was waiving his right to file pretrial motions. On January 15, 2010, Turner and his attorney appeared before United States Magistrate Judge Lewis M. Blanton. At that hearing, Turner waived his right to file pretrial motions. A jury trial was set for this case on April 5, 2010.

On April 2, 2010, Turner appeared before this Court and Turner requested that he be allowed to represent himself at the trial. This request was granted.

**C.     Trial.**

On April 5, 2010, Turner appeared to begin his jury trial. The Government presented its evidence. Turner did not testify or present any evidence in his defense. The trial evidence is summarized below.

On July 22, 2009, ATF Special Agent Ryan Becker obtained two federal search warrants to search two locations in Kennett, located in Dunklin County, Missouri. The first location was the private residence of Samuel T. Turner at 805 East $3_{rd}$ Street. The second location searched was Storage Unit # 36, at 707 Independence Street at a business known as McClain Mini Storage. Unit 36 was a temporary storage unit rented by Turner. (Trial Tr. pp. 59 - 63, Exh. 9, 10)

Several state and federal law enforcement officers went to Turner's home. They knocked on the front door and were met by Turner. Agent Becker gave Turner a copy of the search warrants and gave him a Miranda warning. Turner agreed to speak with the officers. The home was searched, but nothing of evidentiary value was found. While some officers were searching the home, other officers went to Storage Unit # 36. Turner provided a key to the storage unit so

the officers could open the unit. During the search of the storage unit the officers found and seized a variety of ammunition, including shotgun shells, .30-30 and .22 caliber rounds. Turner agreed to talk further with the officers at the police station. Officers transported him to the Kennett police station for an interview. (Trial Tr. pp. 63 - 70, 125,126)

Turner initially denied that the ammunition found in the storage unit was his. After a short time, Turner admitted that he obtained the ammunition from his brother-in-law. Turner told the officers that he had also stored a handgun in a red shoe in the storage unit. The officers asked for Turner's consent to search Storage Unit # 36 again. Turner agreed to that search, and signed a consent to search form. The officers and Turner returned to the storage unit. Turner walked into the unit and pointed out the pair of red shoes containing the handgun. An officer picked up the pair of shoes and discovered, in one shoe, an RG Industries, .22 caliber revolver and a box of .22 caliber ammunition. (Trial Tr. pp. 70 - 86)

The officers then spoke again with Turner. Turner said that he had obtained the handgun from the same brother-in-law and that he had the firearm because the police might take a long time to get to his house in an emergency. The officers obtained a DNA buccal swab with Turner's consent. Becker asked if the handgun was loaded. Turner stated that it was, and that he had fired it one time during the previous week. Becker opened the cylinder of the revolver and noted that the handgun contained five live rounds of ammunition and one spent round. Turner said that he fired the handgun once a week or so to make sure that it still worked. (Trial Tr. pp. 75, 76, 81, 86, 87)

At the time of the search, Turner was a previously convicted felon, having been convicted of the felonies of Second Degree Robbery and Second Degree Assault. ATF Special Agent

Kevin Martin examined the handgun and determined that it was manufactured in the State of Florida. Martin also gave his opinion that the firearm affected interstate commerce prior to the discovery of the handgun in Missouri. Trial Tr. pp. 91 - 95, 148 - 153, Exh. 34, 36, 37)

The handgun was examined by Missouri Highway Patrol Laboratory Chemist Shaminie Athinarayanan. She determined that the handgun had combined DNA on it; that is, the DNA on the handgun was contributed by at least two people. Several of Turner's DNA markers were found on the handgun DNA. Athinarayanan opined that Turner could not be excluded as a person who touched the revolver. Trial Tr. pp. 154 - 171)

After presentation of that evidence, the parties argued the case and the jury was instructed by the Court. The case was then submitted to the jury. After due deliberation, the jury returned with its verdict, finding Turner guilty on the charge made in the Indictment.

### D. The Presentence Report.

United States Probation Officer Paul H. Boyd prepared a Presentence Investigation Report (P.S.R.). That report recommended that the base offense level be set at 33 pursuant to U.S.S.G. §4B1.4(b)(3)(B). This offense level was required because Turner was an Armed Career Criminal due to his three prior felony convictions for violent felonies. Those prior violent felonies included two separate convictions for Second Degree Assault and one conviction for Second Degree Robbery. (P.S.R. ¶ 22)

The P.S.R. disclosed that Turner had seven felony convictions, including: Stealing (1991), Forgery (1991), Criminal Recklessness (1992), Unlawful Use of a Weapon (1994), Second Degree Assault and Second Degree Robbery (2002), and Second Degree Assault (2007). Turner accumulated a total of eight criminal history points for his last three felony convictions,

resulting in a criminal history category of IV. The other convictions did not count for criminal history points due to their age. Turner's Guidelines range of imprisonment was calculated to be 188 to 235 months, based on his total offense level of 33 and a criminal history category of IV. Turner was subject to a mandatory minimum sentence of 180 months pursuant to 18 U.S.C. § 924(e) due to his previous convictions for three violent felony offenses. (P.S.R. ¶¶ 26 - 61, 84, 85)

      E.      **The Sentencing Hearing.**

On July 2, 2010, this Court conducted a sentencing hearing. Turner again appeared *pro se*. Neither Turner nor the Government objected to the factual statements contained in the P.S.R. or its application of the facts to the Guidelines. This Court accepted the statements and calculations contained in the P.S.R. and found Turner's total offense level to be 33 and his criminal history category to be IV, resulting in a Guidelines range term of imprisonment of 188 to 235 months. After allocution, this Court decided to vary downward to the statutory minimum term of imprisonment and imposed a sentence of imprisonment of 180 months. In its Statement of Reasons, the District Court described the circumstances that led it to grant a downward variance to Turner. Those reasons included the nature of the defendant's criminal history and the impact of his criminal history on the mandatory minimum sentence required by statute, as well as the determination that the sentence imposed was sufficient but not more than necessary to achieve the sentencing objectives. (Sent. Tr. 198 - 205; Statement of Reasons, p. 3)

      F.      **The Appeal.**

On July 6, 2010, Turner filed a notice of appeal. The Eighth Circuit Court of Appeals appointed Michael A. Skrien to represent Turner in his appeal. In that appeal, Turner raised three

issues. In his first issue on appeal, Turner argued that the District Court did not properly question Turner or advise him concerning his request to represent himself. Turner's second issue argued that the District Court erred by not ordering *sua sponte*, that Turner undergo a competency examination either during or after the trial. Turner's third issue contended that the District Court erred by finding that Turner was competent and whether the District Court used the proper standard for that finding. All of those appellate arguments were rejected by the July 12, 2011 decision of the Eighth Circuit in *United States v. Turner*, 644 F.3d 713 (8th Cir. 2011).

  G. **Petition for Post-Conviction Relief Pursuant to §2255.**

On September 30, 2011, Turner filed his Petition under 28 U.S.C. §2255, asking that this Court set aside Turner's sentence. On October 6, 2011, Turner filed a motion to supplement his allegations of error for his § 2255 petition. The Government has answered both the original petition and the supplemental request in this Response. Turner also filed a memorandum in support of his petition. Turner set our several allegations of error as noted separately below.

**APPLICABLE LAW**

  A. **NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF**

28 U.S.C. §2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not

entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*., at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104

## DISCUSSION

**Ground one. Illegal Sentence.**

In his first issue, Turner claims that one of his previous felony convictions for Assault in the Second Degree was not a crime of violence. The Information reveals that Turner was convicted of Assault in the Second Degree in violation of § 565.060 because Turner "attempted to cause physical injury to Gregory Davis by means of a dangerous instrument by striking him repeatedly with a chair." The only question is whether this conduct describes a crime of violence.

Courts use the categorical approach articulated by the Supreme Court in its cases interpreting Title 18, U.S.C. § 924(e)(2)(B) to determine whether a prior conviction was for a crime of violence. *United States v. Williams*, 627 F.3d 324, 327-28 (8th Cir. 2010). Under this approach, the sentencing court is generally prohibited from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to look only to the fact of conviction and the statutory definition of the prior offense. *United States v. Vinton*, 631 F.3d 476, 484 (8th Cir. 2011), citing *Shepard v. United States*, 544 U.S. 13, 17, 125 S.Ct. 1254 (2005). When a statute of conviction encompasses several different crimes, some of which qualify as crimes of violence and some of which do not, we may use a modified categorical approach to determine which part of the statute was the basis for conviction. *Vinton*, 631 F.3d at 484. Under the modified categorical approach, a court may examine the trial record, including charging documents, jury instructions, written plea agreements, transcripts of plea colloquies, and findings of fact and conclusions of law from a bench trial. *Id*.

Both the Government and Turner agree that the Missouri statute involved, § 565.060, contains several types of offense conduct, some of which should be classified as violent felonies

and some which should not. The only issue is to determine which subsection of § 565.060 that Turner was convicted under and to decide if that subsection describes a violent felony. *Shepard* and other cases dictate that this Court may look at the charging Information to determine which subsection of the Missouri Second Degree Assault statute was violated by Turner.

This exact same issue was presented in *Vinton*, as cited above. Vinton had been charged with knowingly causing physical injury to a person by means of a dangerous instrument. This type of conduct was held in *Vinton* to engage subsection (2) of § 565.060 and was held to be a crime of violence. (Crimes of violence under U.S.S.G. § 4B1.2(a) and violent felonies under Title 18, U.S.C. § 924(e) are defined similarly by this Circuit. *See Vinton*, 631 F.3d at 484.) The *Vinton* court specifically held:

> We further conclude that second-degree assault, under the second subsection, is a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another, . . . and that it is therefore a crime of violence. *Id*., at 485.

The *Vinton* decision completely disposes of Turner's argument that his conviction for Second Degree Assault with a Dangerous Weapon was not a violent felony. This Court properly found that Turner's 2007 conviction for Assault in the Second Degree was a violent felony and that Turner was properly classified as an Armed Career Criminal.

In order to be classified as an Armed Career Criminal, pursuant to Title 18, United States Code, Section 924(e), a defendant must be convicted of being a felon in possession of a firearm and/or ammunition and have at least three prior convictions for violent felonies or serious drug offenses. A violent felony is defined as:

> . . . any crime punishable by imprisonment for a term exceeding one year, . . . that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . .

Turner's conviction for Second Degree Assault is a violent felony under both subsections (i) and (ii). First, Turner was charged, and convicted of attempting to "cause physical injury to Gregory Davis by means of a dangerous instrument by striking him repeatedly with a chair." (Exh. 2) This crime clearly has, as an element, the use or attempted use of physical force against the person of another.

Turner's conduct of conviction is also a violent felony under the "otherwise" clause of subsection (ii), as his crime involved conduct that presents a serious potential risk of injury to another. In order to be convicted of his crime, Turner had to admit using a "dangerous instrument." A dangerous instrument is defined by Missouri statutes as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." R.S.Mo. § 556.061(9). Turner used that chair as a weapon readily capable of causing death or other serious physical injury.

His actions clearly involved conduct that presented a serious potential risk of physical injury to another.

Turner's conviction for Second Degree Assault is clearly a violent felony. Turner was properly sentenced as an Armed Career Criminal with at least three prior violent felony convictions.

**Ground two. Actual Innocence.**

In this ground, Turner contends that Missouri has restored his civil rights and that he cannot be convicted of the federal offense of being a felon in possession of a firearm. Turner contends that he is not a "felon" pursuant to Title 18, U.S.C. § 921(a)(20), which states, in relevant part:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned *or has had civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms. (Emphasis furnished.)

A person convicted in any court of a crime punishable by more than one year may not possess ammunition or firearms. Title 18, U.S.C. § 922(g)(1). The predicate conviction cannot have been expunged or set aside, nor can the person have been pardoned for it, or had civil rights restored. Title 18, U.S.C. § 921(a)(20). The status of a conviction is determined by the law of the jurisdiction where the proceedings where held. *United States v. Brown*, 408 F.3d 1016, 1017 (8th Cir. 2005).

Turner asserts that his Missouri has restored his civil rights and that he should not be classified as unable to possess firearms. Turner's exact argument has been previously rejected by this Circuit in several cases, including two that occurred in this Division.

In *United States v. Brown*, 408 F.3d 1016 (8th Cir. 2005), a case from this Division, the defendant was convicted of being a felon in possession of ammunition in violation of Title 18, U.S.C. § 922(g)(1). This is the same statute that Turner was convicted under. It criminalizes possession of firearms and/or ammunition by felons. Brown contended that Missouri restored his

civil rights following his four Missouri felony convictions. The *Brown* court rejected that assertion, noting that Missouri withholds substantial civil rights and that [defendants with Missouri convictions are] "not restored to sufficient civil rights in order to invoke section 921(a)(20)." *Id*., at 1017. The *Brown* court then noted several decisions holding that Missouri does not restore sufficient civil rights to allow a defendant to claim relief under §921(a)(20), citing *Presley v. United States*, 851 F.2d 1052, 1053 (8th Cir. 1988); *United States v. Williams*, 128 F.3d 1128, 1134 (7th Cir. 1997) (applying Missouri law); *United States v. Meeks*, 987 F.2d 575, 577-78 (9th Cir.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 314 (1993) (applying Missouri law).

Turner relies primarily on a district court holding in *United States v. Presley*, 667 F.Supp. 678 (W.D. Mo. 1987) for his authority. However, Turner misquotes and misinterprets the district court opinion for his own purposes. Turner cites the district court case for the proposition that Presley, as a "released convicted felon did get civil right fully restored". Turner's Supplemental Motion, filed October 6, 2011; p. 3. Turner then includes the statement that "Missouri's jurisdiction was precluded disallowing lawful possession of a firearm, per incuriam, allowing federal jurisdiction to override contrary to state granted rights restoration. This resulted in denied application of § 921(a)(20) federal law an absurdity referred to indirectly by Honorable Judge Sachs *fn1." Turner also refers to this district court ruling in his brief supporting his petition filed on September 30, 2011.

The reason that the district court issued its Order was to respond to Presley's motion to dismiss his indictment. Presley contended, as does Turner here, that his civil rights were restored to the point where his federal prosecution as a felon in possession of a firearm was barred by Title 18, U.S.C. § 921 (a)(20). United States District Court Judge Sachs ruled that Presley's civil

rights had not been restored sufficiently by Missouri to allow him the benefit of the exclusion of § 921(a)(20). Turner completely ignores the holding of the case he relies on. Judge Sachs held "While the question is a close one, I believe the combination of limitations is sufficient so that I cannot in good conscience say that Missouri has substantially preserved or restored the civil rights of released convicts, as contemplated by Congress." Turner mistakenly asserted that Presley was found to have his civil rights restored sufficiently to preclude his prosecution as a felon in possession of a firearm. Turner is simply wrong as to the law and the facts of the district court case. Turner also ignores the Eighth Circuit decision following Presley's conviction that also determined that his civil rights were not restored.

In a more recent case arising out of this Division, Joseph Akens was convicted of being a felon in possession of a firearm and possession of marijuana with the intent to distribute. *United States v. Akens*, 602 F.3d 904 (8th Cir. 2010). Akens made the same argument as Brown, that his civil rights had been restored and his previous Missouri felony conviction could not serve as the predicate conviction for his classification as a felon. *Id.*, at 908. The Eighth Circuit rejected Aken's argument, noting that this issue had previously been decided in *United States v. Brown*, 408 F.3d at 1017. *Akens*, 602 F.3d at 908.

Turner has not cited any case from any circuit that has held that Missouri felons have their civil rights restored to the point where they may not be prosecuted as felons in possession of firearms. There is indeed a long history of Eighth Circuit case law holding that Missouri felons do not have their civil rights sufficiently restored to allow them the benefit of the exclusion permitted in Title 18, U.S.C. § 921(a)(20).

Turner's contention that his civil rights have been restored is completely refuted by

Eighth Circuit precedent. Turner's civil rights have not yet been sufficiently restored by the State of Missouri to permit him to use Title 18, U.S.C. § 921(a)(20) to claim that he is not prohibited from possessing firearms. His claim on this issue is without merit.

**Ground three. Ineffective Assistance of Counsel.**

In this claim, Turner argues that his attorney was ineffective for failing to follow his instruction and because his attorney did not consult with Turner as to the appeal. Turner does not set out any specific defense that he would have advised his attorney to pursue, nor does he set out any course of action that his attorney followed that was incorrect. Turner simply avers that his attorney acted improperly, without showing how the attorney's actions affected Turner's case. Vague assertions complaining about an attorney's conduct will not suffice for a finding that Turner's attorney was ineffective.

The *Strickland* standard requires that, for ineffective assistance of counsel claims, the defendant must show that his counsel's performance was deficient - that his counsel's representation fell below an objective standard of reasonableness - and that such deficient performance prejudiced his defense - that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the [trial or appeal] would have been different. *United States v. Regenos*, 405 F.3d 691, 693 (8th Cir. 2005). Turner fails to specify any theory that was not advanced by his attorney that would have resulted in success at trial or appeal. Turner merely concludes that his attorney was ineffective for failing to consult with him during preliminary stages of his case and refusing to adhere to Turner's wishes as to the appeal. Turner does not specify what action he would have required his attorney to take. More importantly, Turner fails to demonstrate how this alleged failure of communication affected the outcome of

his case. Without alleging how he was prejudiced, Turner has failed to satisfy the second prong of the *Strickland* test and this Court may decline to hold an evidentiary hearing on that basis alone. *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1106 (8th Cir. 2011); *Smith v. United States*, 618 F.2d 507, 510 (8th Cir. 1980) (holding that the mere recitation of unsupported conclusions will not suffice to necessitate an evidentiary hearing).

Turner also claims that this Court did not advise him that he had the right to appeal his case and the right to have an attorney appointed to represent him for that appeal. Turner's Memorandum, filed September 30, 2011; p. 8. However, the sentencing transcript clearly shows that this Court did advise Turner of his right to appeal his conviction and sentence and that he had a right to have an attorney appointed for his appeal. (Tr. p. 203) After this Court informed Turner of those rights, Turner acknowledged that he understood his rights. (Tr. p. 203) Turner has no valid complaint that he didn't understand his appellate rights or his right to have an attorney represent him in that appeal, since he exercised both rights.

Turner has not shown that there was a reasonable probability of a different result, either at trial or appeal, by any claimed error on the part of his attorney. Without that showing, his claim may be denied.

## CONCLUSION

For the foregoing reasons, Turner's § 2255 motion is **DENIED**.

**SO ORDERED** this 27th day of December, 2011.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE